[Civ. No. 25956.   Second Dist., Div. One.   Aug. 2, 1962.]

ARNOLD LONDON et al., Plaintiffs and Appellants, v. ANSEM HOLDING COMPANY et al., Defendants and Respondents.

Joseph W. Fairfield and Ethelyn F. Black for Plaintiffs and Appellants.

Max Mayer and Sylvan Y. Allen for Defendants and Respondents.

LILLIE, J.—This is an action for involuntary dissolution and winding up of a corporation which assertedly was rendered inoperable by the inability of its two directors to select a third (Corp. Code, § 4651). The amended complaint also asked that defendants London and Allen account for their "dissipation" of the corporation assets and income. During the

course of the trial, a nonsuit was granted as to Allen; upon the trial's conclusion, dissolution was denied and the judgment in its other aspects was against the plaintiffs. The present appeal is from such adverse judgment.

There is no dispute as to certain salient facts. Ansem, a family-controlled company, was organized in 1952. Its assets consisted of the family home and furnishings, certain art objects and partnership interests in real estate and theaters located in Detroit. Transfers of these interests to the company was effected by assignments duly executed by the following members of the family: Defendant William London, plaintiff Fannie London (his then wife), plaintiff Arnold London and Theodore London (their sons) and a daughter. Notes were issued by the company in exchange for these transfers. Thereafter Ansem's sole business consisted of receiving its share of the net earnings from the various partnerships, paying company overhead and retaining the balance for the family's household and living expenses. In April of 1955 three certificates of stock, each for one share, were issued to defendant Allen (for the benefit of William and Fannie London), Theodore London and the Londons' daughter respectively.

In May of 1955 plaintiff Fannie London instituted a separate maintenance action in Los Angeles County against defendant William London. In July of 1959, after protracted proceedings, an interlocutory decree of divorce was awarded the plaintiff in that action. The parties having theretofore stipulated in open court as to the disposition of the property involved, the decree provided in part as follows:

"3. The community property consists of three shares of capital stock of the defendant, Ansem Holding Company, a California corporation, and the assets of said Ansem Holding Company constitute and are community property. . . .

"5. As regards the stockholdings in Ansem Holding Company which are now held by R. E. Allen, Receiver for the defendant William London, subject to the order of the court, it is hereby ordered that two shares of the said capital stock shall be the sole and separate property of Fannie London and one share the sole and separate property of William London, subject, however, to the following conditions, to wit: That the said stockholdings shall be formally transferred to Joseph W. Fairfield and Sylvan Y. Allen, Attorneys at Law, as co-escrow holders and said escrow holders shall vote and use the powers associated with such holding in the manner as hereinafter indicated and instructed.

"(a) The plaintiff and defendant, William London, shall be, or a nominee of each shall be, a director, and the third director shall be a person agreed upon by each of the said parties either directly or through their nominee. In the event they cannot jointly agree upon a nominee then the escrow holders shall be empowered to appoint the third director.

"(b) The net income from said Ansem Holding Company, after expenses and payment of taxes shall be paid as follows: $75.00 per week to the plaintiff as the first disbursement and then $75.00 per week to the defendant, William London, as the second disbursement. Thereafter $100.00 or more per month as the directors may determine to be paid on account of attorneys' fees hereinafter to be fixed.

"(c) That thereafter the net proceeds are to be divided two-thirds to the plaintiff and one-third to the defendant, William London; said payments shall be made monthly and the rights to such payments shall accumulate from month to month in the event that there shall be insufficient net proceeds available. . . .

"6. It being understood that all of the holders of promissory notes issued by Ansem Holding Company to the plaintiff and to the defendant, William London, and to the three children, to wit, Sulamithe Strauss, Theodore Lee London and Arnold London, have agreed to surrender their said notes for cancellation; IT IS HEREBY ORDERED that the plaintiff and defendant, William London, shall do such acts as shall be necessary to accomplish the surrender of said notes. . . .

"8. The defendant, William London, will hold Arnold London and the plaintiff harmless from any tax claims or liens presently existing or asserted by the Federal Government arising out of income tax liability from the operation of any of the theaters falling partially or fully under the control of the Ansem Holding Company. All parties concerned to agree to cooperate in the legal satisfaction of said claims.''

It appears that the stipulation relating to the disposition of the property, finalized by the interlocutory decree, was entered into in April of that year. A meeting was held during that month, present at which were Messrs. Fairfield and Allen, William London and Arnold London, his mother's nominee. A third director was never agreed upon—more will be said of that later.

The present action was commenced in December of 1959. The complaint, as amended, alleges (among other things) that "neither the directors, Arnold and William London, nor the

trustee can agree upon a third director with the result that the number of directors are [*sic*] evenly divided and cannot agree as to the management of its affairs and that as a result thereof, the business of the corporation can no longer be conducted to advantage.'' Also it is alleged that ''all of the assets of the corporation consist of ownership of leaseholds of theaters and ownership of property in Detroit, Michigan, and it is impossible to ascertain the rights of the corporation in and to its assets and there is danger that its property and business may be impaired and lost.'' There is a further allegation that ''there is internal dissension between the two factions of shareholders of the corporation, consisting of Fannie and William London, and they are so deadlocked that its business can no longer be conducted with advantage to its shareholders.'' Prior to the institution of this action, in October of 1959, Mrs. London had unsuccessfully sought a modification of the decree, the motion stating that ''the escrowing of the stock and the creation of the Board of Directors as set out in the Decree prevents the successful operation of the corporation, and denies the plaintiff the possibility of receiving funds for her necessary living expenses.''

The court's findings resolve the several issues for determination listed in the pretrial order. Thus, the trial court found that all of the shares of stock and all of the assets of the corporation had been adjudged to be community property by a stipulated judgment in the divorce action (which judgment had theretofore become final); that the disposition of said assets and their management and control were provided for in the interlocutory judgment and were subject to the further order of court in that proceeding; that a dissolution of the corporation would frustrate and defeat such distribution and the further jurisdiction of the divorce court and render nugatory the pertinent provisions of the divorce decree. ▮▮ Implicit in this finding is a recognition of the principle that ''When a divorce is pending the power of a husband over the community property exists until the entry of a final decree. [Citations.]'' (*Vai* v. *Bank of America,* 56 Cal.2d 329, 337 [15 Cal.Rptr. 71, 364 P.2d 247].) Indeed, this settled principle was recognized by the mother when she sought modification of the judgment before the pendency of this litigation. The circumstances at bar must be considered in that light, although appellants properly point out that the husband's position as trustee is not terminated when the spouses separate.

Another issue, resulting from defendant London's fiduciary

status, was his asserted malfeasance and misfeasance while an officer and director of the corporation. In this connection it is stated that in frustration of the purpose of the interlocutory decree he had refused to conduct the corporation in a business-like manner and took the position that "he was the corporation." Much of the difficulty, of course, stems in great measure from the deadlock occasioned by the failure of either director to nominate a third. The evidence shows that in July of 1959 the father and Arnold agreed that a third director was not needed; that later the father submitted to the mother five names for her selection as the third director; that she made no selection therefrom nor did she or her son submit any names acceptable to them from which a third director might have been selected. Meantime, the father's responsibility was to take care of the collection of funds in Detroit for the corporation, pay expenses and issue checks—the checkbook and bankbook were left with the father at the first meeting following the rendition of the divorce decree. While in Detroit, it appears, the father admittedly filed wtih the county clerk at that county seat a certificate of doing business under the fictitious name of Ansem Holding Company. The trial court so found, declaring (in that connection) that by using said certificate he had endorsed and deposited checks made payable to the corporation. However, the court additionally found that no damage resulted to the corporation; that while such action constituted misfeasance, it was not malfeasance which would warrant any ground for the relief generally prayed for by appellants. Since the company was a family-controlled corporation, the irregularity in question loses much of the importance claimed for it. (*Crane Valley Land Co.* v. *Bank of America,* 182 Cal.App.2d 166, 173 [5 Cal.Rptr. 731].) Too, appellants concede that no monetary loss accrued to the corporation as a result of the father's activities—as held in *Anderson* v. *Derrick,* 220 Cal. 770 [32 P.2d 1078], cited by appellants, actionable misfeasance must result in loss of corporation assets. ■ It follows from the above that the issue of the asserted misfeasance and malfeasance of defendant Allen (as to whom a nonsuit was granted) was correctly resolved—it likewise appearing that the corporation sustained no damage by reason of this defendant's actions. In view of the nonsuit, perhaps findings should not have been made with respect to Allen (*Mason* v. *Peaslee,* 173 Cal.App.2d 587 [343 P.2d 805]); these findings, however were mere surplusage in view of the overall result reached below.

Respecting the issue of whether an accounting should be made by the father, the court found that this defendant was the principal managing agent for the corporation and as such should account for all the assets and income received from the inception of the company to the time of trial; the court also found that "said defendant did so account, and that all of the items of said account should be approved and settled to the date hereof." The latter part of the above finding is vigorously challenged. The record reveals that a great portion of the testimony taken was devoted to the accounting features of the case. Robert Pink, a certified public accountant, testified with reference to the books and records, receipts and disbursements; that he was furnished whatever information he requested of the father; that he prepared income tax returns and balance sheets; that the entries reflected by the books were correct. Appellants' counsel and the court examined both the father and Pink regarding the pertinent exhibit (Plaintiffs', 9). We are satisfied that appellants' criticisms go merely to the weight of the testimony now challenged. It seems to be suggested that Pink was dominated completely by the father, but the trial court had to determine the credibility of this witness and the reasons given for his conclusions.

There was also the issue of the extent and nature of the company's assets. A rather detailed finding was made thereon by the trial court; by such finding it was also declared that certain furniture and furnishings were voluntarily distributed among the members of the London family, as to which the father was accountable.

Other contentions are raised, and have been considered, but they do not serve to warrant a reversal. Thus, it is suggested that the trial court should have filled the vacancy in the board (Corp. Code, § 4613) and that its failure to do so was an abuse of discretion. True, there has been an impasse; and while continued hostility between a trustee and a beneficiary under a living trust has been held to be grounds for removal of the trustee (*Estate of Gilmaker*, 57 Cal.2d 627 [21 Cal.Rptr. 585, 371 P.2d 321]), we do not have quite that situation here.

In our opinion, the trial court aptly summed up (at the time of the rendition of his oral decision) when he stated in part:

"Now, I say that for the protection of Mrs. London, and for the purpose of avoiding further litigation, I think this litigation is, and any further litigation is going to be without purpose, and I think that Mr. London ought to render an

annual account, I think he ought to have a balance sheet, and the parties ought to make an effort to cooperate, and I believe that if a sincere effort to select a third director was made, it would result in the selection of one.

"If you can't agree to that, the divorce court has the authority to either vacate its order appointing trustees, and appoint other trustees, or to take such other action as may be necessary in order to break that deadlock."

For the reasons stated, the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.